**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **VALERIE WILLIFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIV-20-186-R** |
| | ) | |
| **INTERSTATE TRUCKERS LTD. ASSISTANCE ADMINISTRATION,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 46) to which Plaintiff filed a response (Doc. No. 66) and Defendant filed a reply in support of its position. (Doc. No. 72). Upon consideration of the parties' submissions, the Court finds as follows.[1]

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts

[1] Defendant previously filed a Motion to Strike Errata Sheet, directed at Plaintiff's corrections and supplementation of her deposition answers, ostensibly pursuant to Federal Rule of Civil Procedure 30. The Court ordered Defendant to provide a copy of Plaintiff's entire deposition, which it did. The Court informed the parties that it would likely address the errata sheet issue when it considered Defendant's motion for summary judgment. In response to the Motion for Summary Judgment Plaintiff does not rely on any of her supplemental or corrected answers. In light of the Court's ruling, this issue has been rendered moot.

create an issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). In reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).

Plaintiff's claims arise from her prior employment as an attorney at Interstate Trucker, Ltd. Assistance Administration ("Interstate"). Plaintiff was terminated from her employment on August 17, 2018, by Brad Klepper, President. Plaintiff contends that during the two years she was employed by Interstate she was subjected to a hostile work environment and that her termination was in retaliation for complaints of gender discrimination. Defendant denies Plaintiff's allegations.

Plaintiff was hired by Defendant on August 3, 2016, to perform legal services on behalf of truck drivers who receive tickets, often in jurisdictions where they do not reside. Interstate generally hires local counsel to represent those drivers, although it will utilize in-house attorneys for tickets considered local to its Oklahoma City offices. Plaintiff was originally hired to assist with legal proceedings in Texas, but her caseload was expanded to include the state of Washington. During her employment Plaintiff was supervised by the assistant supervisor of the legal department, Tim Whittlesey, and by the supervisor of the department, Jennifer Simon.

On May 15, 2018, Plaintiff inquired of a co-worker, legal assistant Pam Plumtree, whether all the men at Interstate sexually harassed the female employees.[2] Pam asked Plaintiff whether she was being harassed, and Plaintiff indicated, "not anymore." (Doc. 56-1, p. 41). Someone, presumably Pam Plumtree, thereafter informed Jennifer Simon of Plaintiff's allegations of sexual harassment; Ms. Simon approached Ms. Williford about any issues she might be having. Plaintiff testified that she told Jennifer Simon about an incident that had occurred on January 5, 2017, when she was working at a machine sending facsimiles to various courts. She contends that Tim Whittlesey approached the machine and violated her space in order to riffle through the confirmation sheets with unnecessary force. She recounted that while doing so he bent his body in half so that his face was directly next to Plaintiff's crotch, and that he looked up at her and smiled broadly.[3] Plaintiff asserts that in response to this story Jennifer Simon rolled her eyes; as a result Plaintiff shared none of her other experiences with sexual harassment. (Doc. 56-1, p. 42).

Shortly thereafter, on June 14, 2018, Plaintiff wrote a multi-page complaint letter to Brad Klepper outlining a litany of complaints. (Doc. No. 46-14). The apparent catalyst for the letter was a request by Jennifer Simon to temporary employee Ethel Stallin, that

---

[2] Plaintiff testified that she asked this question in the context of a retirement lunch for an attorney, Chip, who was dating a younger female employee of Interstate. (Doc. 56-1, p. 41).

[3] Plaintiff characterized this incident as a "sexual assault" and wrote in a June 14, 2018 letter that Tim Whittlesey thereafter became hostile toward her, disagreeing with her about legal issues and requesting that she find a statute to support her particular legal position. Plaintiff admits she did not provide the statute until much later. She contends she was left out of discussions between Tim Whittlesey and Kathy Richardson, the legal assistant assigned to Texas cases, about payment of costs and fees by Interstate clients. Plaintiff also believed that Ms. Richardson had it out for her.

Ms. Stallin adhere to Interstate's dress code by wearing toenail polish if she chose to wear open-toes shoes.[4]

Plaintiff began the letter by addressing the issue of Ms. Stallin and the toenail polish, an incident Plaintiff did not witness but which she heard about from Pam Plumtree. Plaintiff's letter also complained about having been previously told that she could not wear a certain dress because it was too short per the company's dress code. Plaintiff wrote about her May 15, 2018 interaction with Jennifer Simon, doubting the sincerity of Ms. Simon's inquiry and stating Jennifer Simon was probably just "being nosy." She alleged an additional incident with Tim Whittlesey, that allegedly occurred on December 1, 2016.

> On November 30, 2016, Mary and I were talking about how Chris would take leave even though he had used his vacation time. I told Mary nothing would happen to him, and yelled out, "Because God forbid if Tim had to work with a woman!"
>
> The next day I was walking to lunch. I opened the door and felt someone else pushing on it. I turned around and looked directly into Tim's face. He had his arm over my shoulder pushing on the door and was standing so close his shoe was probably touching the back of my heel. He did not say a word.

*Id.* at p. 2.[5] She further asserted that in September 2016, Tim Whittlesey engaged in inappropriate comments to an employee named Mary, when Mary asked if she could make a conference call. Mr. Whittlesey allegedly responded that he would not return to his office if she was going to use it to have a "sex orgy." Plaintiff also wrote that in February 2017, Tim Whittlesey stated, while speaking to Jennifer Simon outside of Plaintiff's office, "I'll

---

[4] The letter began, "[t]his letter is to provide notice of the sex discrimination, sexual harassment, and hostile work environment at Interstate Trucker." (Doc. No. 66-23, p. 1).

[5] Plaintiff further alleged that on November 30, 2016, that Plaintiff overheard Tim Whittlesey making "orgasm noises," while he was on a telephone call with another employee.

beat a woman's ass. Just ask my ex-wife.[6]" She alleged that both Jennifer Simon and Tim Whittlesey referred to women using slurs, such as "bitches.[7]" She also asserts that she had issues with two customers of Interstate, one mad that a female attorney had been assigned to appear in court on his behalf and one who got irate with Plaintiff and called her a "fucking bitch" when she informed him that his costs and fees were due.[8] Plaintiff complains Interstate had no policy for dealing with such clients.

Plaintiff emailed the June 14, 2018 letter to Brad Klepper, who responded the next day indicating that although he was out of the office, he found her allegations troubling and he had started the process of hiring an outside investigator. Onward Solutions, LLC, a human resources consultant group conducted an investigation into Plaintiff's allegations. The investigation report was completed on July 2, 2018. The investigators found Plaintiff's "allegations including sexual harassment, gender discrimination, hostile work environment and retaliation to be uncorroborated." (Doc. No. 46-9, p. 15). The report recommended training and education for Defendant's employees as well as a change to the company's dress code.[9]

Bookending Plaintiff's June 14, 2018 letter were events of June 8, 2018 and June 19, 2018. On June 8, 2018, Plaintiff failed to verify that a court proceeding would take

---

[6] Plaintiff's letter also indicated that Brad Klepper laughed at such comments by Tim Whittlesey.

[7] Plaintiff does not allege that either Jennifer Simon or Tim Whittlesey ever referred to her as such.

[8] Plaintiff asserts that Tim Whittlesey refused to speak with the first client when she requested that he do so.

[9] Brad Klepper informed Plaintiff of the results of the investigation in a July 9, 2018 letter. He informed her that there would be harassment and discrimination training and that he would be addressing the behavior of certain unidentified individuals separately. He also indicated he would be amending the dress code. Defendant provides a "Memorandum to File" for both Jennifer Simon and Tim Whittlesey, reminding both of their obligation to conduct themselves professionally and advising that retaliation was inappropriate. (Doc. No. 46-18). When Plaintiff was terminated on August 11, 2018, the dress code had yet to be amended.

place in a particular jurisdiction.[10] On June 19, 2018, Jennifer Simon issued a written warning to Plaintiff about the issue.[11] Plaintiff contends this reprimand was in retaliation for her June 14, 2018 complaints of discrimination.

On August 13, 2018, Jennifer Simon met with Plaintiff and executed a Warning Notice and Counseling Session form. The form indicates Plaintiff was being warned because in June she requested that a money order be issued but then she left it on her desk until August rather than mailing it to the appropriate clerk of court to pay the costs and fines for a client.[12] Plaintiff signed the warning form and shortly thereafter entered Brad Klepper's office. Although Plaintiff disputes that she yelled, she does not deny she stormed into his office, was insubordinate and disrespectful, and cursed at him.[13] Plaintiff contends she entered Brad Klepper's office to complain that the dress code had not yet been updated as he indicated would happen in his July 2018 letter. Brad Klepper testified that he could not understand what Plaintiff was trying to communicate because she was so upset. After Plaintiff left his office, he asked Jennifer Simon, Tim Whittlesey and other employees

---

[10] There is no dispute that a ticket was to be heard in North Richland Hills, not Richland Hills, Texas, as indicated in the intake of the case. Plaintiff, as attorney, was charged with verifying the jurisdiction for purposes of sending counsel to represent the client. Although Plaintiff contends she verified the information she admits that she was on the telephone with the clerk for Richland Hills when she got interrupted and hung up. She indicated, incorrectly, in the Defendant's tracking system that the verification had been completed although she had failed to actually complete it. Had she called the Richland Hills clerk's office back it would have been revealed that Interstate was directing local counsel to the wrong jurisdiction. The issue was ultimately resolved, but not on the date originally established by the ticket, because counsel did not appear on behalf of the client; he appeared in Richland Hills rather than North Richland Hills.

[11] Plaintiff complains that the intake clerk was not disciplined for her part in the error. The Court finds this fact immaterial, because the intake clerk is not a valid comparator. She holds a different position of lower responsibility and does not report to the same supervisor as Plaintiff, an attorney.

[12] The warning notice described the behavior as "hired an atty then got a plea deal did not fire atty did not mail out plea ppwk left money & plea sitting in overnight envelope since 6/22/18." (Doc. 46-22)

[13] Numerous employees of Interstate have characterized Plaintiff's actions as yelling. Plaintiff does not dispute that she was angry.

whether anything had occurred during the counseling session that accompanied Plaintiff's written warning, attempting to discern whether Plaintiff's behavior had been triggered by that meeting. Everyone denied any issues. Brad Klepper terminated Plaintiff's employment after the incident in his office.

Plaintiff contends the events about which she complained in her letter as well as the other events set forth above created a hostile work environment on the basis of gender. She further contends that the disciplinary actions taken against her in the summer of 2018 and her termination were in retaliation for her June 14, 2018 letter. Defendant seeks summary judgment on Plaintiff's claims.[14]

With regard to Plaintiff's hostile work environment claim, Defendant argues that certain of the complaints are untimely and that the facts taken as true do not establish a hostile work environment. Alternatively, Defendant raises the *Faragher/Ellerth* affirmative defense.[15] The Court concludes that, even accepting as true all of Plaintiff's properly supported allegations, including those that occurred more than 300 days before she filed her EEOC charge, she cannot establish that she was subjected to a hostile work environment.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of

---

[14] Plaintiff pled a claim for discrimination via disparate treatment but did not address Defendant's motion beyond the hostile work environment and retaliation claims. Accordingly, the Court deems the disparate treatment claim abandoned.

[15] Under this defense to a hostile work environment claim a defendant may avoid liability by showing that it exercised reasonable care to prevent and promptly correct sexually harassing behavior and that the employee plaintiff unreasonably failed to take advantage of preventative or corrective opportunities the employer provided.

such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1); *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1134 (10th Cir. 2005). Under Title VII, a plaintiff can prove discrimination in several different ways, including by establishing the existence of a hostile work environment.

> A hostile work environment claim is "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). To overcome summary judgment on this claim, the plaintiff must show (1) [s]he was discriminated against because of [her] sex, and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of [her] employment. *Sanderson*, 976 F.3d at 1174. An employer can be held liable if its employees create a hostile work environment and "it knew or should have known about the conduct but failed to stop it." *Bertsch v. Overstock.com*, 684 F.3d 1023, 1027 (10th Cir. 2012), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018).

*Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021).

> In order to show that she was harassed "because of her sex," *id.,* a plaintiff may cite acts of harassment that are either facially sex based or facially sex neutral if context indicates that acts that may appear neutral in isolation could be understood by a jury to be part of an overall animus and pattern of sexual discrimination and harassment. "Facially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." *O'Shea*, 185 F.3d at 1097. "If it reasonably could be inferred that the conduct was related to gender or arose out of a context in which admittedly sex and gender-related conduct occurred, then it is for the fact finder to decide whether such an inference should be drawn." *Id*. In other words, it is ordinarily the province of the jury to decide whether facially sex-neutral conduct constitutes harassment based on sex.

*Delsa Brooke Sanderson v. Wyoming Highway Patrol*, 976 F.3d 1164, 1174 (10th Cir. 2020). Although the issue of a hostile work environment is frequently a jury issue, the

Court may grant summary judgment if Plaintiff fails to establish a genuine issue of material fact regarding the severity or pervasiveness of the alleged harassment.

In assessing a hostile work environment claim the Court must "consider the work atmosphere both objectively and subjectively, … looking at all the circumstances from the perspective of a reasonable person in the plaintiff's position." *Herrera v. Lufkin Indus. Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)(internal quotation marks and citation omitted). That is, a hostile work environment is one that a reasonable person would find hostile or abusive. Further, '"[i]n order to prevail on the subjective component of this test, the law does not require a plaintiff to show that the discriminatorily abusive work environment seriously affected her psychological well-being or that it tangibly impaired her work performance." *Davis,'* 142 F.3d at 1341 (citation omitted)" *Morris v. City of Colorado Springs*, 666 F.3d 654, 665 (10th Cir. 2012). In assessing determining whether conduct is objectively sufficiently severe or pervasive, the Court considers: "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." *Holmes v. Regents of Univ. of Colo.*, 176 F.3d 488 (Table), 1999 WL 285826, at *7 (10th Cir. May 7, 1999) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).[16] Severity and pervasiveness "are, to a certain degree inversely related; a sufficiently severe episode may occur as rarely as once..., while a relentless pattern of lesser harassment that extends over

---

[16] Plaintiff argues in response to Defendant's motion for summary judgment that the Court and jury must aggregate evidence of racial hostility with evidence of sexual hostility. (Doc. No. 66, pp. 25-26). She does not, however, identify any other areas of alleged harassment that the Court could aggregate.

a long period of time also violates the statute." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) (quoting *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)). "[M]ere utterance of an . . . epithet which engenders offensive feelings in a employee, does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (internal quotation marks and citations omitted).

Plaintiff worked at Interstate for two years. She contends the following events occurred during her tenure: (1) in September 2016, she overheard Tim Whittlesey ask attorney Mary whether she needed his office to conduct sex orgies when she asked to use his room to make a conference call; (2) On December 1, 2016, a day after Plaintiff alleges that during a conversation with Mary, Plaintiff yelled "God forbid Tim have to work with a woman," Tim pushed on a door while she was attempting to open it, standing extremely close to her; (3) On January 7, 2017, Tim Whittlesey bent over and looked at Plaintiff's crotch while she was sending facsimile messages, under the guise of retrieving confirmation pages; (4) in February 2017, Plaintiff overheard Tim Whittlesey say "I'll beat a woman, just ask my ex-wife"; (5) in August 2017, Plaintiff was harassed by an Interstate client; (6) in November 2017, Plaintiff overheard Tim Whittlesey making "orgasm sounds"; and (7) in June 2018, Jennifer Simon enforced the company's dress code with regard to an employee, not Plaintiff, requiring that women wearing open-toed shoes have polished toenails. Plaintiff further contends that she heard Jennifer Simon and Tim Whittlesey refer to women as "bitches," although there is no dispute that she was never the target of the comment.

In order to establish a hostile work environment, Plaintiff must establish that Plaintiff was harassed because she is a woman.

> The Supreme Court has held in the context of a hostile work environment claim based on the protected class of sex, a plaintiff has three ways to show the causal link between the alleged harassment and the protected ground: (1) explicit or implicit proposals of sexual activity motivated by sexual desires; (2) harassment motivated by general hostility toward members of one gender in the workplace; or (3) comparative evidence about a supervisor's treatment of members of each sex in a mixed-sex workplace. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998). "[N]ot all harassment creates a hostile work environment," and to survive summary judgment, a plaintiff must show that the harassment was "*because of the gender*." *Chavez v. New Mexico*, 397 F.3d 826, 832-33 (10th Cir. 2005) (emphasis in original).

*Osman v. Bimbo Bakeries USA, Inc.*, No. 14-CV-03281-MEH-CBS, 2016 WL 192275, at *10 (D. Colo. Jan. 15, 2016). Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "*discrimina[tion]* ... because of ... sex." Plaintiff does not identify which of these standards she believes applies, however, it appears to the Court that premised on her allegations she believes there was hostility toward women in the workplace at Interstate.

Regardless, the Court finds that even when viewing all of the events about which Plaintiff complains holistically, they cannot be considered so severe or pervasive as to have created a work environment tainted by gender hostility.[17] This is especially true given that the majority of the employees at Interstate were women, including the supervisor of the

---

[17] Other than the slur, Plaintiff conceded that nothing of a sexual nature occurred after February 2017. (Doc. No. 56-1, p. 110). She did not hear the term "bitch" used in the office after her June 2018 letter to Brad Klepper. *Id.*

legal department, about whom Plaintiff complains. Although Plaintiff testified that she subjectively found the environment hostile because of her gender, the Court finds insufficient evidence to establish the objective prong.

With regard to the frequency of the discriminatory conduct, the testimony by Plaintiff does not establish that she was subjected to alleged discrimination daily as a result of Tim Whittlesey's boorish behavior and Jennifer Simon's use of the term "bitch." The conduct about which Plaintiff complains was not severe. Additionally, although Plaintiff characterized the incident at the copier as sexual assault, there is no dispute that Tim Whittlesey did not touch Plaintiff when he allegedly bent over and looked toward her crotch. There are no allegations of true physical threats by Tim Whittlesey against Plaintiff; rather, he is alleged to have made inappropriate sexual remarks and gender-based remarks within earshot of Plaintiff but not to her. Plaintiff testified that the comments and activities did not interfere with her work performance. The Court finds the evidence construed in the light most favorable to the Plaintiff insufficient to establish that a reasonable person would have found the environment to be hostile. This is not a case involving a "steady barrage" of sexual comments or comments about women. *See Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). Rather, accepting as true all of Plaintiff's allegations as supported by the evidence, the environment was not sufficiently severe or pervasive so as to constitute a hostile work environment. As a result, the Court finds that Defendant is entitled to

summary judgment on Plaintiff's hostile work environment claims under both Title VII and the OADA.[18]

Defendant also seeks summary judgment on Plaintiff's retaliation claims. Plaintiff lacks direct evidence of retaliation, and accordingly, the three-step burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Garrett v. Hewlett-Packard Co*., 305 F.3d 1210, 1216 (10th Cir. 2002), applies. Step one requires that a plaintiff establish a prima facie case of retaliation. Defendant concedes that Plaintiff has sufficient evidence to establish a prima facie case—that is she engaged in protected activity and subsequent thereto was subjected to an adverse employment action. Accordingly, at step two Defendant must demonstrate a legitimate, non-discriminatory, or more specifically non-retaliatory reason for its action. *Id.* Defendant contends that it terminated Plaintiff because of her insubordination to Brad Klepper on August 14, 2018. Because Defendant has come forward with a legitimate, non-discriminatory reason, Plaintiff may avoid summary judgment by demonstrating that Defendant's explanation for her termination is pretextual. *Id.* Pretext may be shown when the employer's reasons for the adverse employment action are so implausible, contradictory, or insubstantial that a trier of fact could find them unworthy of belief. *Pinkerton v. Colo. Dep't of Transp*., 563 F.3d 1052, 1065 (10th Cir. 2009). However, "[m]ere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *Anderson v. Coors Brewing Co.*,

[18] S*ee also Jones v. Needham*, 856 F.3d 1284, 1292 (10th Cir. 2017) ("The OADA is analyzed similarly to Title VII claims."); *Cunningham v. Skilled Trade Servs., Inc.*, No. CIV-15-803-D, 2015 WL 6442826, at *3 (W.D. Okla. Oct. 23, 2015) ("[C]laims under the OADA are evaluated using the same standards as claims under Title VII, and a claim that fails under Title VII will also fail under the OADA.").

181 F.3d 1171, 1179 (10th Cir. 1999)(citation omitted). Plaintiff's burden is one of production, not persuasion, at this stage. That is, Plaintiff need only demonstrate that a genuine issue of material fact exists as to whether Defendant's proffered reasons were unworthy of belief. The Court examines "the facts as they appear *to the person making the decision* and do[es] not look to the plaintiff's subjective evaluation of the situation." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 971 (10th Cir. 2017)(quotations omitted). "Instead of asking whether the employer's reasons were wise, fair[,] or correct, the relevant inquiry is whether the employer honestly believed those reasons and acted in good faith upon those beliefs " *Id.* (quotations omitted).

The Tenth Circuit recently addressed pretext in the context of insubordination with regard to a claim for discriminatory termination.

> Pretext is shown when the employer's reasons for the adverse employment action are so implausible, contradictory or insubstantial that a trier of fact could find them unworthy of belief. *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009). Bacy argues summary judgment on her disparate treatment claim was inappropriate because she raised a genuine issue of material fact as to whether she was actually insubordinate. She asserts [her employer's] explanation for her discharge is "unworthy of belief" because she alleged in an affidavit that she has never raised her voice at Laminack and never committed any act of insubordination, Even if Bacy's statements are true, they do not create a genuine issue of material fact or support Bacy's burden of showing pretext. In evaluating pretext, "the relevant inquiry is not whether [the employer's] proffered reasons were wise, fair, or correct, but whether [the employer] honestly believe those reasons and acted in good faith upon those beliefs." *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004) (quotation omitted). This court's role "is not to second guess an employer's business judgment." *Id.* Bacy's pretext argument fails because she has not presented any evidence showing [her employer] did not honestly believe she was insubordinate.

*Bacy v. Chickasaw Nation Industries, Inc.*, --- Fed.Appx. ---, 2021 WL 1187403, *3 (Mar. 30, 2021). Here Plaintiff presents no evidence that Brad Klepper did not believe she was insubordinate, despite her protests that she did not yell at him. When Plaintiff initially entered his office and confronted him about the failure to amend the dress code, Brad Klepper indicated that Plaintiff was yelling, crying, and difficult to understand. Although Plaintiff asserts she lacked the physical ability to yell due to a medical condition, her perspective is not the relevant one here. Additionally, there is no dispute that Brad Klepper asked Plaintiff during the heated conversation whether she was aware that it was inappropriate to speak to him in that manner and that she was swearing at him.[19]

To the extent Plaintiff argues that Defendant's rationale for her termination has been inconsistent or a moving target, the Court concurs with Defendant's argument that an error on third-party paperwork, specifically the termination notice sent to the payroll/human resources contractor and completed by Defendant's accountant, does not support a finding of pretext. "We have previously held that a genuine factual dispute regarding pretext can arise when an employer changes its explanation for an employment decision 'after significant legal proceedings have occurred.'" *Bird v. West Valley City*, 832 F.3d 1188, 1201 (10th Cir. 2016)(quoting *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1311 (10th

---

[19] Plaintiff contends other people yelled in the office place. There is no evidence, however, that any other employee yelled at company president Brad Klepper. "A satisfactory showing that similarly situated employees, who do not belong to the protected class, were treated differently with regard to violation of a work rule could have lent support to the pretext argument. *Cf. EEOC v. Flasher Co.,* 986 F.2d 1312, 1316 (10th Cir.1992)." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997). However, Plaintiff does not present any evidence of an employee cursing at the boss.

Cir. 2005)). Brad Klepper's contention throughout these proceedings and at the time of Plaintiff's termination was that she was terminated because of insubordination.

In response to Defendant's motion Plaintiff argues that she was provoked, because "[e]veryone agrees that Williford went into Klepper's office to complain about Defendant's inaction after her complaint of discrimination." (Doc. No. 66, p. 43). There is no dispute that Brad Klepper had informed Plaintiff after the investigation that the dress code would be updated and that at the time of her termination those updates had not occurred. There is however, no evidence that Plaintiff was promised the dress code would be changed by a particular date or in a particular manner nor is there evidence that on August 13, 2018, when Plaintiff entered Brad Klepper's office and cursed at him, someone had taunted or otherwise made comments to her about the dress code. There is simply no evidence that Ms. Williford was provoked.

Plaintiff also contends that the disciplinary actions to which she was subjected in June and August 2018, the written warnings, are evidence of pretext, because Plaintiff asserts she was targeted and treated differently than co-workers involved in the same transgressions. With regard to the June 2018 written warning for failing to confirm the jurisdiction where the ticket would be heard, Plaintiff complains that the intake clerk who provided the initial incorrect information was not disciplined for her role in the event.

The Court disagrees that this is evidence of pretext. Plaintiff, an attorney, was supervised by Jennifer Simon and Plaintiff's obligations included confirming the court where local counsel would need to appear in order the challenge a ticket. The intake clerk is not supervised by Jennifer Simon nor was she tasked with confirming information.

Rather, it appears that the system implemented by Interstate anticipated that errors might occur at the intake stage, and therefore attorneys were given the responsibility for ensuring that the information Interstate possessed and communicated to local counsel was correct. A plaintiff may show pretext "by providing evidence that he was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness." *Kendrick v. Penske Trans. Services, Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000). However, a similarly situated employee is one who "deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." *Id.* (internal quotation marks and citation omitted) Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly situated. *Id.* There is no dispute that Plaintiff and Maureen Dahlem the intake clerk who failed to identify the incorrect information upon opening the file were supervised by different people and performed different functions at Interstate, and it is further undisputed that it was the role of the attorney to verify the information before sending outside counsel to court. Therefore, the Court rejects Plaintiff's argument that the absence of any discipline to Ms. Dahlem supports a finding of pretext.

Upon consideration of the parties' submissions, the Court finds that, even accepting as true Plaintiff's facts, she cannot prevail on her hostile work environment claim or her retaliation claim under Title VII or the Oklahoma Anti-Discrimination Act. Therefore, Defendant is entitled to summary judgment and its motion is GRANTED. Judgment shall

be entered accordingly. Defendant's Motion to Strike (Doc. No. 27) and Motion to Exclude (Doc. No. 51) are DENIED AS MOOT.

**IT IS SO ORDERED** this 12th day of May 2021.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**